### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF WEST VIRGINIA
### AT MARTINSBURG

> ELECTRONICALLY
> FILED
> Aug 23 2023
> U.S. DISTRICT COURT
> Northern District of WV

DALE BERNARD BEARD, JR.,

                           Plaintiff,

vs.                                   Civil Action No. **3:23-CV-193 (Groh)**

DANIEL E. SMITH, individually
ADAM ALBAUGH, individually,

                           Defendants.

## COMPLAINT

This complaint, brought pursuant to 42 U.S.C. Section 1983, and the Fourth Amendment to the United States Constitution, arises out of the defendants' commission of federal constitutional violations committed against the plaintiff in Berkeley County, West Virginia, on or about August 23, 2021, within the Martinsburg Division of the Northern District of West Virginia.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## PARTIES

1.      Plaintiff , Dale Bernard Beard, Jr.,was at all times relevant hereto a resident of Berkeley County, West Virginia.

2.      Defendant police officer Daniel E. Smith, was at all times relevant hereto a sworn police officer employed by the Martinsburg Police Department, and was at all times relevant hereto acting under color of law. He is named herein in his individual capacity, having an address of 125 W. Race Street, Martinsburg, West Virginia 25401.

1

3.    Defendant police officer Lt. Adam Albaugh, was at all times relevant hereto a sworn police officer employed by the Berkeley County Sheriff's Office, and was at all times relevant hereto acting under color of law. He is named herein in his individual capacity, having an address of 510 South Raleigh Street, Martinsburg, West Virginia 25401.

## FACTS

4.    On, or about, August 23, 2021, defendant police officer, Daniel E. Smith, a sworn police officer employed by the Martinsburg Police Department, pulled plaintiff over for driving without a valid motor vehicle inspection sticker. Plaintiff, who operates an agri-tourism business involving the care of numerous farm animals, was driving a small car used for farm purposes and was retrieving supplies for his farm animals. As such, the small car was packed full of feed bags and other farm supplies. At the time of the traffic stop, plaintiff was already parked in a parking spot in a private parking lot and his window was fully rolled down. There were no occupants in his vehicle, the entirety of which was fully visible to defendant Smith during the interaction.

5.    After pulling plaintiff over, defendant Smith approached plaintiff's vehicle and told him why he had stopped him, and asked him for his driver's license and registration. Smith asked plaintiff why he was shaking. Plaintiff responded that he wasn't shaking. Smith then asked plaintiff if he had anything illegal in the vehicle. Plaintiff responded by asking Smith if he had anything illegal on him. Defendant Smith then requested a K9 unit via dispatch, for the purposes of enabling a search of plaintiff's vehicle. Defendant Smith, after requesting a K9 unit, asked plaintiff to get out of the vehicle. Plaintiff asked defendant Smith why he had to get out of the vehicle and what crime he had committed. Despite plaintiff not actually refusing to get out of the vehicle, defendant Smith proceeded to open the vehicle's door and physically remove plaintiff

2

from the vehicle. Defendant Smith then immediately placed plaintiff under arrest for obstruction. This all occurred at a mere one minute and thirty-four seconds into the traffic stop.

6.      At some point during this interaction, defendant Lt. Adam Albaugh, defendant Smith's supervisor, arrived on the scene and advised defendant Smith that he recognized plaintiff.

7.      Defendant Ryan Kolb of the Berkeley County Sheriff's Office also later arrived on the scene and proceeded to conduct the K9 sniff of plaintiff's vehicle. At this time, plaintiff was already under warrantless arrest, handcuffed, and sitting in the rear of Smith's police cruiser.

8.      During the sniff, defendant Kolb's canine partner allegedly alerted, and defendants Smith and Kolb proceeded to conduct a search of plaintiff's vehicle.

9.      The search of plaintiff's vehicle produced a backpack with prescription pill bottles which had been legally prescribed to plaintiff, a baggy which defendants Smith and Kolb said they believed to contain marijuana tar, and a small container with a white powdery substance which defendants Smith and Kolb said they believed to be cocaine. None of the items were field tested at the scene, and ultimately none of the items tested positive to be controlled substances. Plaintiff repeatedly explained to defendant Smith that he had never used drugs and that there were no illegal drugs in his car.

10.     At this point, despite not yet having field tested any of the items, defendant Lt. Albaugh told defendant Smith that he could charge plaintiff with obstruction and possession of the substances. Defendant Smith issued plaintiff citations for no inspection sticker and for having an open container. Additionally, and despite having absolutely no information or proof as to the

nature of the substances, defendant Smith proceeded to charge plaintiff not only with obstructing, but also with possession of marijuana, and possession with intent to deliver cocaine.

11.     Plaintiff's vehicle was impounded and he was subsequently taken to the Martinsburg Police Station for processing, and then to a Magistrate where he posted bond.

12.     While at the Station, defendant Smith had the white powdery substance field tested. The results came came back inconclusive and negative for a "fake narcotic substance." Despite these results, defendant Smith persisted in charging plaintiff with possession with intent to deliver cocaine.

13.     All of the substances found during the search of plaintiff's vehicle were subsequently sent to the West Virginia State Police Forensic Laboratory for further testing. After approximately nine to ten months the results came back negative for any identifiable controlled substances. At that point, the possession of marijuana and possession with intent to deliver cocaine charges were dismissed.

14.     The open container charge was subsequently dismissed by the Martinsburg Municipal Court. The obstructing charge was also subsequently dismissed by the Berkley County Magistrate Court on motion of the prosecuting attorney.

## COUNT ONE -VIOLATION OF THE FOURTH AMENDMENT
### (False Arrest)

15.     The previous paragraphs are hereby incorporated by reference as though fully restated herein.

16.     On August 23, 2021, defendants Smith and Albaugh, acting under color of law, jointly participated in, and effected, the warrantless arrest of plaintiff for the alleged crimes of

obstruction, possession of marijuana, possession with the intent to distribute cocaine, and additionally issued a citation for having and open container.

17.     Defendants Smith and Albaugh seized the plaintiff and arrested him without a warrant and knowingly did so without probable cause to believe that plaintiff had committed the crimes for which he was charged, or in fact any other criminal offense.

18.     At the time of the plaintiff's arrest, the facts and circumstances within the defendants' joint knowledge, were not sufficient to warrant any reasonably prudent police officer to believe that under the circumstances present at the time, that plaintiff had violated any criminal statute or committed any criminal offense.

19.     No reasonable police officer in either of the defendant police officers' positions on August 23, 2021 would have believed that probable cause existed to make a warrantless arrest of the Plaintiff under the totality of the circumstances as described in the above paragraphs.

20.     The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause. Dunaway v. New York , 442 U.S. 200, 213, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Thus, "[i]f a person is arrested when no reasonable officer could believe ... that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001) (citation omitted).

21.     "Probable cause is determined by a 'totality-of-the-circumstances' approach." Smith v. Munday , 848 F.3d 248, 253 (4th Cir. 2017) (citing Illinois v. Gates , 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). The inquiry "turns on two factors: 'the suspect's

5

conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.' " Id. (quoting Graham v. Gagnon , 831 F.3d 176, 184 (4th Cir. 2016) ). While the court looks to the information available to the officer on the scene at the time, the courts apply an objective test to determine whether a reasonably prudent officer with that information would have thought that probable cause existed for the arrest. Graham , 831 F.3d at 185. Evidence sufficient to secure a conviction is not required, but probable cause exists only if there is sufficient evidence on which a reasonable officer at the time could have believed that probable cause existed for the arrest. Wong Sun v. United States , 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

22.    On the charge of allegedly obstructing an officer, in violation of WV Code § 61-5-17(a), the plain language of the statute establishes that a person is guilty of obstruction when he, "by threats, menaces, acts or otherwise forcibly or illegally hinders or obstructs or attempts to hinder or obstruct a law-enforcement officer, probation officer or parole officer acting in his or her official capacity." The Fourth Circuit recently examined the statute:

As West Virginia's high court has "succinct[ly]" explained, to secure a conviction under section 61-5-17(a), the State must show "forcible or illegal conduct that interferes with a police officer's discharge of official duties." State v. Davis, 229 W.Va. 695, 735 S.E.2d 570, 573 (2012) (quoting State v. Carney, 222 W.Va. 152, 663 S.E.2d 606, 611 (2008)). Because conduct can obstruct an officer if it is either forcible or illegal, a person may be guilty of obstruction "whether or not force be actually present." Johnson , 59 S.E.2d at 487. However, where "force is not involved to effect an obstruction," the resulting obstruction itself is insufficient to establish the illegality required by section 61-5-17. Carney , 663 S.E.2d at 611. That is, when force is not used, obstruction lies only where an illegal act is performed. This is because "lawful conduct is not sufficient to establish the statutory offense." Id.

Of particular relevance to our inquiry here, West Virginia courts have held that "when done in an orderly manner, merely questioning or remonstrating with an officer while he or she is performing his or her duty, does not ordinarily constitute the offense of

obstructing an officer." <u>State v. Srnsky</u>, 213 W.Va. 412, 582 S.E.2d 859, 867 (2003) (*quoting* <u>State ex rel. Wilmoth v. Gustke</u>, 179 W.Va. 771, 373 S.E.2d 484, 486 (W. Va. 1988)).

For example, the Supreme Court of Appeals has found that no obstruction is committed when a property owner asks a law enforcement officer, "without the use of fighting or insulting words or other opprobrious language and without forcible or other illegal hindrance," to leave her property. <u>Wilmoth</u> , 373 S.E.2d at 487. This principle is based on the First Amendment "right to question or challenge the authority of a police officer, provided that fighting words or other opprobrious language is not used." <u>Id</u>. ; *see* <u>Graham</u> , 831 F.3d at 188 ("Peaceful verbal criticism of an officer who is making an arrest cannot be targeted under a general obstruction of justice statute ... without running afoul of the First Amendment." (citation omitted)).

<u>Hupp v. State Trooper Seth Cook</u>, 931 F.3d 307 (4th Cir. 2019).

23.     The body camera footage of the incident shows that plaintiff was polite and cooperative when interacting with defendant Smith. He merely questioned defendant Smith as to what crime had he committed and why he had to get out of the vehicle. Furthermore, at no time did plaintiff verbally refuse to get out of the vehicle. Such conduct does not amount to "forcible or illegal conduct that interferes with a police officer's discharge of official duties." <u>State v. Davis</u>, 229 W.Va. 695, 735 S.E.2d 570, 573 (2012) (*quoting* <u>State v. Carney</u>, 222 W.Va. 152, 663 S.E.2d 606, 611 (2008)).

24.     West Virginia law provides that police officers may not arrest individuals suspected of misdemeanor criminal violations without a warrant, unless the offense is performed in the officer's presence. *See* W. Va. Code § 15-5-18. No criminal violations were committed, or alleged to have been committed by the Plaintiff in the presence of  defendant Smith. Therefore, even had probable cause existed, State law requires that defendant Smith, was mandated to obtain an arrest warrant prior to placing the plaintiff under arrest for misdemeanor criminal violations occurring outside their presence.

25.     No reasonable officer would have believed that probable cause existed for the plaintiff's warrantless arrest on August 23, 2021. Plaintiff was merely questioning defendant Smith's authority to effect a seizure of him, which he possessed a constitutional right to do, and which has been explicitly stated by both the Fourth Circuit and the West Virginia Supreme Court of Appeals, as being lawful. At no time did plaintiff obstruct or hinder any police officer - forcibly or otherwise.

26.     As to the charges of possession of marijuana, and possession with the intent to distribute cocaine, absolutely no probable cause existed for defendants Smith and Albaugh to reasonably believe that the substances retrieved from plaintiff's vehicle were in fact controlled substances at the time plaintiff was charged.

27.     As a direct and proximate result of defendants Smith and Albaugh's actions, plaintiff suffered damages, for which he is entitled to recover.

### COUNT TWO - UNREASONABLE SEIZURE UNDER 42 U.S.C. 1983
### VIOLATION OF THE FOURTH AMENDMENT
### (Malicious Prosecution)

28.     The previous paragraphs are hereby incorporated by reference as though fully restated herein.

29.     In the recent Supreme Court opinion in Thompson v. Clark, 596 U.S. _____ (2022), the Court clarified the application of malicious prosecution claims under Section 1983. The Court held that a plaintiff in a Section 1983 malicious prosecution claim is not required to show that his criminal prosecution ended with an affirmative indication of his innocence. Rather, a plaintiff only needs to show "that his prosecution ended without a conviction."

30.     Here, plaintiff was charged and prosecuted for the alleged crimes of obstruction, possession of marijuana, possession with the intent to distribute cocaine, and was issued a citation for having an open container. These charges were filed in the Berkeley County Circuit Court, the Berkley County Magistrate Court, and the Martinsburg Municipal Court maliciously and for the improper purpose of retaliation for plaintiff exercising constitutionally protected free speech as well as for the improper purposes of harassment. But for the fact that plaintiff questioned Officer Smith's actions and authority during the traffic stop by asking what crime he had committed, as well as asking the officer whether he had anything illegal on him, he would not have been seized, handcuffed, arrested, and prosecuted illegally.

31.     Further corroboration that defendant Smith knew that the prosecution of plaintiff was frivolous and malicious is the fact that he proceeded to charge plaintiff with the felony of possession with the intent to distribute cocaine even though the field test was inconclusive. He did so only to retaliate against plaintiff for attempting to assert his constitutional rights during the traffic stop. Likewise, defendant Smith's charging plaintiff with obstruction when he knew that none of plaintiff's actions constituted such is further evidence that plaintiff's prosecution was frivolous, malicious, and in retaliation for plaintiff exercising his Constitutional right to question defendant Smith. Defendant Smith's goal wasn't conviction, which he knew would not occur in the absence of evidence of criminal wrongdoing, but rather to force plaintiff to undergo the humiliating process of being arrested, incarcerated and charged.

32.     The said charges were dismissed, thus ending without a conviction.

33.     As a direct and proximate result of defendant Smith's actions, plaintiff suffered damages, for which he is entitled to recover.

## COUNT THREE: VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. 1983)

34.    Plaintiff hereby incorporates by reference all of the previous paragraphs.

35.    The Plaintiff engaged in clearly established protected speech by asserting his rights, asking questions and challenging and expressing criticism of defendant Officer Smith during the traffic stop herein.

36.    Not only does the First Amendment protect freedom of speech, it also protects "the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000).

37.    The Fourth Circuit has warned that Plaintiff possessed the "right to question or challenge the authority of a police officer, provided that fighting words or other opprobrious language is not used…" and that any resulting arrest under a general obstruction statute is violative of the First Amendment. Id. ; see Graham v. Gagnon , 831 F.3d 176, 188 ("Peaceful verbal criticism of an officer who is making an arrest cannot be targeted under a general obstruction of justice statute ... without running afoul of the First Amendment." (citation omitted)); cited by Hupp v. State Trooper Seth Cook, 931 F.3d 307 (4th Cir. 2019).

38.    Defendants Smith and Albaugh, acting under color of law, retaliated against the plaintiff for this protected speech by engaging in several adverse actions that would deter a person of ordinary firmness from engaging in such protected speech, including, without limitation, by detaining him, seizing him, searching him, towing his vehicle, and then arresting, charging and prosecuting him, all without probable cause.

39.    There is a causal connection between Plaintiff's protected speech and the adverse actions. But for the protected speech engaged in by the Plaintiff, he would not have been

detained, arrested, searched, and then charged by the defendant officers. *See, e.g.*, <u>Tobey v. Jones</u>, 706 F.3d 379, 390 (4th Cir. 2013).

40.    Defendants have thus violated Plaintiff's clearly established First Amendment rights, as set forth in <u>Hupp v. State Trooper Seth Cook</u>, 931 F.3d 307 (4th Cir. 2019).

41.    Plaintiff suffered damages as a direct and proximate result of the foregoing, for which he is entitled to recover.

<u>**PRAYER**</u>

WHEREFORE, based on the above stated facts, the plaintiff respectfully requests that this Honorable Court award:

1.    Damages against the defendants in an amount to be determined at trial which will fairly and reasonably compensate the plaintiffs for all compensatory damages to be proven at trial;

2.    Punitive damages against the individual defendants in an amount to be determined at trial; and

3.    Reasonable attorney fees and costs pursuant to 42 U.S.C. 1988.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

DALE BERNARD BEARD, JR.
By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com